**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | No. 1:17-CR-10329-DLC |
| | ) | |
| **JAMIE MELO** | ) | |

## AFFIDAVIT OF JAMIE MELO

JAMIE MELO, being duly sworn, deposes and says the following is true and correct to the best of his knowledge and belief:

(1) I am over the age of 18;

(2) I am the Defendant in the above captioned criminal action;

(3) I base this affidavit upon personal knowledge unless otherwise indicated;

(4) On August 30, 2017, prior to 8:30 a.m., multiple agents arrived at my home in North Dartmouth, Massachusetts;

(5) I live in the North Dartmouth home with my wife but she was not present when the agents arrived;

(6) The agents asked to speak with me and I agreed and let them into my home;

(7) Before commencing an interrogation, the agents had me secure my dog in a separate room and they accompanied me while I secured my firearm in a safe;

(8) I work for the Bristol House of Corrections as a Captain and I served as Sherriff Thomas Hodgson's driver at the time the agents came to my home;

(9) The agents conducted the interview at my dining room table;

(10) Prior to starting the interview, I asked them if I could contact my attorney John E. Zajac of Taunton;

(11) Although the agents initially expressed reluctance to involve my attorney, they eventually acquiesced and let me call him;

(12) Attorney Zajac indicated he could not participate in person and he could not participate by telephone until approximately 9:30 a.m. due to his responsibilities in court;

(13) The agents allowed Attorney Zajac to participate by telephone and they did not question me until he could participate in the call;

(14) The agents did ask me if I would allow them to search my computer and cell phone and I agreed to consent to their search;

(15) After I agreed to the search, many agents entered my home;

(16) I remain seated at my dining room table with two agents while many other agents searched my home;

(17) The agents – including the two agents who questioned me in the dining room – carried firearms but they did not remove the firearms from their holsters;

(18) Although I initially obtained water and coffee for the agents prior to the start of the interview, they did not allow me to leave the dining room table once I sat down shortly after 8:30 a.m.;

(19) The interview commenced shortly after 9:30 a.m. when my attorney joined us on the phone;

(20) At no point did the agents ever read me my Miranda[1] rights;

(21) My attorney asked the agents if I was a target of their investigation and they replied that I was and, at that point, I knew I was a target of their investigation;

(22) The agents questioned me from approximately 9:30 a.m. to approximately 12:30 p.m.;

(23) I remained seated at the dining room table from approximately 8:30 a.m. to approximately 12:30 p.m.;

(24) My attorney needed to take multiple breaks during the course of the questioning to attend to his case or cases in court and the agents did not question me without my attorney on the phone but they would not let me leave the dining room table;

(25) When I asked for a glass of water, the agents got it for me;

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

(26) When I asked to take my medication, the agents retrieved it for me and they would not let me leave the dining room table;

(27) When I needed to go to the bathroom, the agents escorted me, waited outside the bathroom and then escorted me back to the dining room table;

(28) Other than the one trip to the bathroom, I never left the dining room table for approximately four hours;

(29) After the conclusion of the interview, the agents arrested me and finally read me my <u>Miranda</u> warnings; and,

(30) For the duration of the interview, I did not feel free to leave and, in fact, I do not believe I could leave my dining room table voluntarily from the moment I sat down until the time they arrested me at the conclusion of the interview.

SIGNED THIS DAY UNDER THE PAINS AND PENALTIES OF PERJURY

Dated: March 26, 2018

    Respectfully submitted,
    JAMIE MELO

    /s/ Jamie Melo
    Jamie Melo

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2018, I served a true and correct copy of the within affidavit upon Assistant United States Attorney Neil Gallagher and upon all other registered users via ECF.

    /s/ Gary G. Pelletier